## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| EVERARDO GARCIA, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:24-CV-00329 |
| | § | |
| CAJUN OPERATING COMPANY, LLC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Everardo Garcia Jr. ("Garcia") was walking toward a Church's Chicken when he allegedly slipped and fell on an oily surface outside the restaurant, suffering injury. Garcia sued Cajun Operating Company, LLC ("Cajun"), the owner and operator of the Church's Chicken. Pending before the Court is Defendant Cajun's Motion for Summary Judgment. (Dkt. No. 15). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Cajun's Motion.

### I. BACKGROUND[1]

Garcia was injured after allegedly slipping and falling on an oily surface outside a Church's Texas Chicken (the "Restaurant") located in Roma, Texas. (Dkt. No. 16-3 at 2–3). Garcia's fall occurred at approximately 4:02 p.m. on March 18, 2024. (Dkt. No. 16-2 at 1). After arriving at the Restaurant about thirty minutes later, the responding officer, Juan Alaniz III, spoke with Cajun's store manager, Sylvia Lozano, who had "not see[n]

---

[1] Except where noted, this section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

any spilled oil in the area."  (*See* Dkt. No. 16-2 at 1); (Dkt. No. 16-3 at 2–3).  Officer Alaniz investigated the area and observed a "major leak coming from the grease drain which had leaked onto the sidewalk in front of the business."  (Dkt. No. 16-3 at 3).  Officer Alaniz contacted Cajun's regional manager, Alfonso Renteria.  (*Id.*).  Renteria told Officer Alaniz that he was "aware of the situation" and was "taking action to resolve the issue."  (*Id.*).

On June 25, 2024, Garcia sued Cajun, asserting claims of negligence and premises liability.  (Dkt. No. 1-4 at 2–5).  Cajun moved for summary judgment on both claims.  (Dkt. No. 15).  Garcia responded, (Dkt. No. 16), and Cajun filed no reply.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could affect the suit's outcome under governing law.  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's

2

response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III. DISCUSSION

Cajun moves for summary judgment, (Dkt. No. 15), on Garcia's claims for negligence and premises liability, (Dkt. No. 1-4 at 4–5), as well as his request for exemplary damages, (*id.* at 2). The Court addresses each claim in turn and finds that summary judgment is warranted on Garcia's negligence claim and request for exemplary damages, but not as to Garcia's premises-liability claim. Before reaching those issues, however, the Court first reviews and rejects Garcia's argument that Cajun's Motion is not a proper summary-judgment motion but is instead a "Rule 12(b)(6) motion in disguise." (Dkt. No. 16 at 1-4).

### A.    PROPRIETY OF MOTION

Garcia argues that Cajun's Motion, which attached only Garcia's operative complaint as evidence, is not a proper summary-judgment motion but is instead a "Rule 12(b)(6) motion in disguise." (*Id.*). Garcia points out that the Fifth Circuit has held that when a motion "only challenge[s] the sufficiency of the plaintiff['s] pleadings," it is "evaluated much the same as a 12(b)(6) motion." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). However, the Fifth Circuit later explained:

> *Ashe* highlights an important distinction—while it is true that a movant cannot support a motion for summary judgment with a conclusory assertion that the nonmovant has no evidence to support his *case*, a movant may support a motion for summary judgment by pointing out that there is no evidence to support a *specific element* on the nonmovant's claim. . . . The movant in *Ashe* did not point to a specific element on which the nonmovant had the burden of proof at trial and allege that there was insufficient evidence to prove that element at trial. . . . Because [the defendant's] motion did point to a specific element—causation—the burden shifted to

> [the plaintiff] to demonstrate that there was a genuine dispute
> for trial.

*Austin v. Kroger*, 864 F.3d 326, 335 n.10 (5th Cir. 2017) (per curiam) [hereinafter *Austin I*] (emphases in original) (internal citation omitted).

Cajun's Motion points to an absence of evidence as to particular elements of Garcia's negligence and premises-liability claims. (Dkt. No. 15 at 5–6). Specifically, Cajun alleges that Garcia failed to show a contemporaneous, negligent activity on the property for the negligence claim or knowledge for the premises-liability claim. (*See id.*). Therefore, it is a proper summary-judgment motion. *See Austin I*, 864 F.3d at 335 n.10. As such, Garcia must respond with genuine issues of material fact on the disputed elements to survive summary judgment. *See id.*

**B.    NEGLIGENCE**

Cajun argues that Garcia cannot recover in negligence because the allegation that Cajun was negligent relates to the allegedly dangerous condition that existed on the premises. (Dkt. No. 15 at 3). Garcia's Response does not address this argument. (*See* Dkt. No. 16 at 3–6). Garcia's failure to address Cajun's argument means that his negligence claim is abandoned. *See Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001) (recognizing that failure to address a claim in response to a party's summary-judgment motion constitutes abandonment of the claim). For that reason alone, Cajun is entitled to summary judgment on Garcia's negligence claim.

Even still, the Fifth Circuit has held that a plaintiff "cannot pursue *both* a negligent activity and a premises defect theory of recovery based on the same injury." *Austin v.*

*Kroger Texas L.P.*, 746 F.3d 191, 197 (5th Cir. 2014) (per curiam) [hereinafter *Austin II*] (emphasis in original). "Although negligent activity and premises liability claims are branches of the same tree, they are conceptually distinct." *Id.* at 196. "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply," and "[w]hen the injury is the result of the property's condition rather than an activity, premises-liability principles apply." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). "The Texas Supreme Court has 'repeatedly characterized . . . slip-and-fall claims as premises defect cases' because the alleged injuries in such cases are 'a result of a physical condition or defect left on the premises.'" *Vasquez v. Home Depot USA, Inc.*, No. 23-20457, 2024 WL 1597756, at *3 (5th Cir. Apr. 12, 2024) (per curiam) (quoting *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472 (Tex. 2017)).

Garcia has never identified any sort of contemporaneous, ongoing activity that caused his injury. And the Parties seemingly agree with Garcia's allegation that he slipped and fell while attempting to walk into the Restaurant. (Dkt. No. 15 at 4); (Dkt. No. 1-4 at 3); (*see also* Dkt. No. 16-2 at 1–2). Because Garcia's claims sound in premises liability, he cannot simultaneously maintain a negligence claim. *See Austin II*, 746 F.3d at 197. Accordingly, the Court **GRANTS** Cajun's Motion for Summary Judgment on Garcia's negligence claim.

### C. PREMISES LIABILITY

To prevail on a premises-liability claim under Texas law, a plaintiff must prove that (1) the property owner had actual or constructive knowledge of a condition on the

premises; (2) the condition posed an unreasonable risk of harm; (3) the property owner did not exercise reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care proximately caused the plaintiff's injuries. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). Here, both parties agree that Garcia was an invitee. (Dkt. No. 15 at 5); (Dkt. No. 16 at 6). Thus, under Texas law, Cajun was obligated "to use reasonable care to protect" Garcia "from an unreasonably dangerous condition in its store of which it had actual or constructive knowledge." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006).

Garcia asserts that Cajun knew or reasonably should have known of the condition—an oily surface. (Dkt. No. 16 at 6). Cajun argues that Garcia has no evidence that Cajun had actual or constructive knowledge of the alleged condition. (Dkt. No. 15 at 5). Garcia does not separate out what facts support actual versus constructive knowledge. Instead, Garcia's Response collectively points to two documents to support a finding of Cajun's knowledge: (1) Cajun's internal report, (Dkt. No. 16-2), and (2) a Roma, Texas, Police Department Incident Report containing an acknowledgement of "the issue" by Cajun's regional manager to police over the phone," (Dkt. No. 16-3 at 3).

A slip-and-fall plaintiff may demonstrate actual knowledge by showing that the defendant actually knew that the substance was on the floor,[2] or constructive knowledge

---

[2] To be sure, a plaintiff may demonstrate actual knowledge by showing the defendant placed the substance on the floor. *Gonzalez v. Walgreens Co.*, 140 F.4th 663, 669 (5th Cir. 2025). However, the Court need not address this basis for actual knowledge because Garcia does not allege that Cajun placed the oily substance on the ground in front of the Restaurant. (*See generally* Dkt. No. 16).

by showing that it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Gonzalez v. Walgreens Co.*, 140 F.4th 663, 669 (5th Cir. 2025). Constructive knowledge "requires proof that an owner had a reasonable opportunity to discover the defect," and "that question requires analyzing the combination of proximity, conspicuity, and longevity." *Id.* at 672 (quoting *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006) (per curiam)). "[T]he rule in Texas is that temporal evidence . . . is the *sine qua non* of a premises owner's constructive knowledge." *Id.* (quoting *Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 315 (5th Cir. 2003)). "Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Id*. (quoting *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002)). "[W]hen circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).

Garcia's fall occurred at approximately 4:02 p.m. (Dkt. No. 16-2 at 1). Thirty minutes later, Officer Alaniz arrived at the Restaurant and spoke with Lozano, Cajun's store manager. (Dkt. No. 16-3 at 2–3). Lozano said that she had "not see[n] any spilled oil in the area." (*See id.*). Officer Alaniz investigated the area and observed a "major leak coming from the grease drain which had leaked onto the sidewalk in front of the business." (*Id.*). Officer Alaniz then contacted Cajun's regional manager, Alfonso

Renteria, who told Officer Alaniz that he was "aware of the situation" and was "taking action to resolve the issue." (*Id.*).

The Court finds that the evidence presents genuine issues of material fact as to whether Cajun had knowledge—actual or constructive—of the oily surface. (Dkt. No 16-3); (Dkt. No. 16 at 5–6). Officer Alaniz's observation of a "major leak . . . which had leaked onto the sidewalk in front of the business" supports the plausible inference that the oily surface existed long enough to give Cajun a reasonable opportunity to discover it. *See Gonzalez*, 140 F.4th at 672 (quoting *Spates*, 186 S.W.3d at 567 (explaining that temporality, proximity, conspicuity, and longevity factor into the constructive-knowledge analysis)). The fact that the leak was "major" shortly after Garcia's fall suggests that the oily surface had been present for some time before Garcia fell. And the leak was so major that Officer Alaniz "notified [Roma] Fire and Public works," which prompted them to "place caution tape around the area to prevent public access." (Dkt. No. 16-3 at 3). The fact that the leak had reached "onto the sidewalk in front of the business" just after Garcia's fall further suggests that the oily surface was in a place where Cajun could have easily noticed it.

Even disregarding Officer Alaniz's observations of the leak, Renteria's statements about the "situation" and "issue" alone preclude summary judgment. Statements that Renteria was "aware of the situation" and was "taking action to resolve the issue" support the plausible inference that he knew about the oily surface on which Garcia ultimately slipped. Alternatively, one could infer that Renteria knew about the leaking grease drain that caused the oily surface. While Renteria could have been referring to Garcia's fall itself, which would not tend to establish Cajun's knowledge, that inference

is not plausible. Lozano, the store manager, was not aware of Garcia's fall until after Officer Alaniz arrived at the Restaurant. (*Compare* Dkt. No. 16-3 at 2–3 (noting that Officer Alaniz arrived at 4:31 p.m.), *with* Dkt. No. 16-2 at 1 (noting that Cajun was notified at 4:35 p.m.)). Logically, for Lozano to have informed Renteria about the fall, she would have had to immediately call Renteria after Officer Alaniz told her about the fall, but before Officer Alaniz called Renteria. Plus, the words Renteria used — "taking action to resolve the issue" — strongly indicate he was addressing a physical, ongoing hazard (like the major leak or the oily surface), rather than a past, completed event (like Garcia's fall). Accordingly, fact issues exist as to whether Cajun had actual or constructive knowledge of the oily surface at the time of Garcia's fall. Summary judgment is therefore inappropriate, and the Court **DENIES** Cajun's Motion for Summary Judgment on Garcia's premises-liability claim.

### D.    EXEMPLARY DAMAGES

Cajun argues that Garcia cannot recover exemplary damages because there is no evidence of gross negligence or malice. (Dkt. No. 15 at 6). Garcia's Response does not address this argument. (*See generally* Dkt. No. 16). Garcia's failure to address Cajun's argument means that his exemplary-damages demand is abandoned. *See Vela*, 276 F.3d at 678–79.

Even if he had not abandoned it, Garcia's exemplary-damages demand would nevertheless fail. "Exemplary damages may be awarded only where there is clear and convincing evidence of fraud, malice, or gross negligence." *Quesnot v. Costco Wholesale Corp.*, No. 5:15-CV-01014, 2016 WL 11586209, at *1 (W.D. Tex. Aug. 24, 2016) (quoting

*James J. Flanagan Ship. Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 368 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Exemplary damages may only be awarded against a corporation if it "(1) authorizes or ratifies an agent's malice, (2) maliciously hires an unfit agent, or (3) acts with malice through a vice principal." *Quesnot*, 2016 WL 11586209, at *1 (quoting *Qwest Int'l Commc'ns, Inc. v. AT&T Corp.*, 167 S.W.3d 324, 326 (Tex. 2005) (per curiam)). Garcia has not alleged facts—let alone offered any evidence—demonstrating that Cajun was grossly negligent or acted maliciously through an agent or vice principal. (*See generally* Dkt. Nos. 1-4, 16).

Cajun is thus entitled to summary judgment on Garcia's request for exemplary damages, and the Court **GRANTS** Cajun's Motion for Summary Judgment on Garcia's request for exemplary damages.

## IV. CONCLUSION

In sum, Cajun is entitled to summary judgment on Garcia's negligence claim and request for exemplary damages, but not the premises liability claim. Considering the foregoing analysis, the Court **GRANTS in part** and **DENIES in part** Cajun's Motion for Summary Judgment. (Dkt. No. 15).

It is SO ORDERED.

Signed on March 30, 2026.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

11